IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABDELHALIM MOHAMMAD ALSHARQAWI, and AMANI AHMAD M. SALEH, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:06-CV-1165-N |
| ALBERTO R. GONZALES, United States Attorney General, *et al.*, | § § § § | |
| Defendant. | § | |

**ORDER**

Before the Court is the motion to dismiss pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6) [14] of Defendants Albert Gonzales, United States Attorney General,

Michael Chertoff, Secretary, United States Dept. of Homeland Security, Emilio Gonzales,

Director, United States Citizenship and Immigration Services ("USCIS"), Robert Cowan,

Director National Benefits Center, USCIS, Jim Carbonneu, Officer in Charge, USCIS

Orlando Sub-Office, and Angela Barrows, District Director, USCIS, Dallas District Office.

Defendants contend that because the adjustment of status is a discretionary procedure under

the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq*., ("INA"), the Court lacks

jurisdiction to adjudicate Plaintiffs Abdelhalim Mohammad Alsharqawi and Amani Ahmad

Saleh's (together, "Alsharqawi") claim for mandamus.   Also before the Court is

Alsharqawi's motion for oral argument on Defendants' motion to dismiss [26].  For the

reasons discussed below, the Court denies both motions.

ORDER – PAGE 1

## I. ALSHARQAWI'S APPLICATIONS

On January 2, 2003 Plaintiff Saleh, a citizen of the United States, married Plaintiff Alsharqawi, a native and citizen of Jordan. On March 24, 2003, Ms. Saleh filed an I-130 application for adjustment of status to lawful permanent resident, and filed a petition to classify Mr. Alsharqawi as an immediate relative pursuant to 8 U.S.C. § 1151(b)(2)(A)(I). Approval of the latter is a prerequisite to qualify for adjustment of status. Alsharqawi also filed an I-131 application for travel authorization and an I-765 application for work authorization on that same date.

On June 30, 2006, Alsharqawi filed this claim for mandamus against Defendants, seeking to compel Defendants to adjudicate Alsharqawi's application for lawful permanent residence and application for travel authorization.[1] Both applications remain pending at the USCIS's Dallas District Office, nearly four years after their filing. Alsharqawi contends that the Court has jurisdiction to compel Defendants to act, even if it cannot direct what that action must be. Defendants, on the other hand, contend that adjudicating an application is discretionary and thus deprives the Court of jurisdiction. Defendants therefore move to dismiss Alsharqawi's claims pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, Defendants contend that even if the Court does have jurisdiction to compel action under 28 U.S.C. § 1361 (the "Mandamus Act"), Alsharqawi has failed to state a claim

---

[1]Since filing this claim, Alsharqawi's work authorization application has been approved for one year.

ORDER – PAGE 2

upon which relief may be granted and thus move to dismiss his claims pursuant to Rule 12(b)(6).

## II. MOTION TO DISMISS STANDARD

A party that believes jurisdiction to be improper may challenge the court's authority by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Once jurisdiction is challenged, the burden rests upon the party seeking to invoke the court's jurisdiction to prove that jurisdiction is proper. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995). In deciding a jurisdictional challenge, the court may look beyond the complaint's jurisdictional allegations to determine if jurisdiction is present. That is, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Raming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir.1996)).

A party may challenge the merits of a case by filing a motion to dismiss pursuant to Rule 12(b)(6). *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim."). Courts may dismiss a complaint for failure to state a claim only if it is clear that the plaintiff can prove no set of facts consistent with the allegations of the complaint that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing a Rule 12(b)(6) motion, the court must liberally construe the complaint in favor of the plaintiff and accept as true all well-pleaded facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. ALSHARQAWI PROVES THAT JURISDICTION IS PROPER

In our federal system, courts may exercise authority over a case only if, and only to the extent, federal law allows. If federal law expressly prohibits a court's adjudicatory authority, the court must dismiss the case. *Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984) (A "presumption [of jurisdiction], like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent."). Here, Alsharqawi argues that jurisdiction arises under 28 U.S.C. § 1361 (the "Mandamus Act"), 28 U.S.C. § 1331, and the Administrative Procedures Act ("APA"), 8 U.S.C. § 706(1).

The Mandamus Act vests courts with original jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is generally viewed as "a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402 (1976). The Supreme Court has explained that the "writ of mandamus has traditionally been used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (internal quotations and citations omitted). In other words, mandamus relief is appropriate "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) (internal quotation and citation omitted).

ORDER – PAGE 4

The APA requires an administrative agency to act upon matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." *Id.* § 706(1).[2]  Federal courts' jurisdiction is limited only when agency action is committed to agency discretion by law or specifically precluded; "[w]hen an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect, judicial review . . . is in order." *In re Amer. Feder. of Gov. Employees, AFL-CIO*, 790 F.2d 116, 117 (D.C. Cir. 1986).  Much like mandamus relief, such relief under the APA is considered an extraordinary measure. *See, e.g.*, *Chromcraft Corp. v. E.E.O.C.*, 465 F.2d 745, 747 (5th Cir.1972) (explaining that "§ 706 . . . requires . . . a showing of prejudice before agency action can be set aside for its lack of punctuality.")

Because compelling agency action is an extraordinary remedy regardless of the statute from which the remedy derives, relief is appropriate, and jurisdiction lies, only when the plaintiff can establish "a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available."[3]  *Newsome v. E.E.O.C.*,

---

[2]"Because, in cases he APA provides an enforceable legal right to agency action within a reasonable time, and the duty of the agency is prescribed by federal statute requiring interpretation of federal law, [28 U.S.C.] § 1331 and APA § 706(1) combine to provide federal subject matter jurisdiction over the controversy."  Yu v. Brown, 36 F. Supp. 2d 922, 929 (D.N.M. 1999).

[3]In *Telecommunications Research and Action Center v. F.C.C.*, 750 F.2d 70 (C.A.D.C. 1984) ("*TRAC*"), the D.C. Circuit Court of Appeals articulated a six factor test to use in assessing claims of agency delay under APA section 555(b), which included:

(1) the time agencies take to make decisions must be governed by a "rule of

301 F.3d 227, 231 (5th Cir. 2002).  The duty owed must be plainly defined, nondiscretionary,

and free from doubt, and the act must be purely ministerial.  *See Dunn-McCampbell Royalty*

*Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1288 (5th Cir. 1997).  To allow

otherwise would "defeat[] the very policies sought to be furthered by that judgment of

Congress."  *Kerr*, 449 U.S. at 403.  Therefore, for Alsharqawi to meet his burden and prove

that jurisdiction is proper here, he must show: (1) a clear right to have his applications

adjudicated, (2) that Defendants' have a nondiscretionary duty to act, and (3) that no other

adequate remedy exists.

### A.  Defendants' Nondiscretionary Duty to Adjudication Applications

Focusing on the second prong first, Alsharqawi contends that Defendants'

nondiscretionary duty to adjudicate applications for adjustment of status derives from 8

U.S.C. § 1154(b).  Section 1154(b) states:

> reason"; (2) where Congress has provided a timetable or other indication of the
> speed with which it expects the agency to proceed in the enabling statute, that
> statutory scheme may supply content for this rule of reason; (3) delays that
> might be reasonable in the sphere of economic regulation are less tolerable
> when human health and welfare are at stake; (4) the court should consider the
> effect of expediting delayed action on agency activities of a higher or
> competing priority; (5) the court should also take into account the nature and
> extent of the interests prejudiced by delay; and (6) the court need not find any
> impropriety lurking behind agency lassitude in order to hold that agency action
> is unreasonably delayed.

*Id.* at 80 (internal citations and quotations omitted).  However, the Court explained that "the
first stage of judicial inquiry is to consider whether the agency's delay is so egregious as to
warrant mandamus," suggesting that in satisfying the rigorous mandamus standard a party
necessarily satisfies the standards set forth in *TRAC*.  *Id.* at 79.  Because, here, the Court
finds mandamus relief appropriate, the Court will confine its analysis to the mandamus
standard.

ORDER – PAGE 6

> After an investigation of the facts in each case . . . the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

*Id.* (emphasis added). The word "shall" is an auxiliary verb that modifies "approve," thereby expressing Congress's intent to mandate the approval of applications upon a determination that the facts in the application are true and that the applicant falls into one of three categories. The inverse implication of 1145(b)'s mandate is that an application shall be denied if the applicant does not meet the qualifications. Either way, section 1145(b) appears to mandate action, i.e., adjudicating applications. The qualifying phrase following "shall" and preceding "approve" represents Congress's intent to leave the outcome of a *specific* application to the USCIS upon consideration of the relevant facts. Alsharqawi therefore argues that, taken together, section 1145(g)'s terms create a purely ministerial and nondiscretionary duty on the part of USCIS to determine whether or not Alsharqawi's applications should be granted.

Defendants' unpersuasively argue that section 1154(b) does not create a mandatory duty to act because 8 U.S.C. § 1255(a) places the decision of whether to adjust an alien's status within the discretion of the Attorney General. Defendants reason that because Alsharqawi does not have the right to Legal Permanent Resident ("LPR") status, he has no right to action on his application. However, Defendants "confuse[] . . . [their] discretion over *how* [they] resolve[] [applications] . . . with [their] discretion over *whether* [they] resolve[]

them." *Dabone v. Thornburgh*, 734 F. Supp. 195, 200 (E.D. Pa. 1990) (emphasis added). In addition to the mandatory language of section 1145(b), 8 U.S.C § 1103 states that "[t]he Attorney General *shall* be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." (emphasis added). The Code of Federal Regulations further provides, among other things, that "the applicant *shall* be notified of the decision of the director, and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2 (emphasis added). In other words, the statutes and the regulation state, in no uncertain terms, that certain action shall be taken by Defendants even if the ultimate determination of how they will act is committed to their discretion. Accordingly, regardless of the ultimate decision, Defendants have a nondiscretionary duty to act on Alsharqawi's application. *Yu*, 36 F. Supp. 2d at 931.

What is more, Defendants have a duty to adjudicate Alsharqawi's application for adjustment of status within a reasonable time. Although Defendants contend that no statute or regulation provides a specific time period in which USCIS must act, under APA section 555(b), when Congress fails to specify "a time by which an adjudication should be made, . . . the necessary implication [is that] adjudication must occur within a reasonable time." *Yu*, 36 F. Supp. 2d at 932 (quoting *Agbemaple v. INS*, 1998 WL 292441 *2 (N.D. Ill May 18, 1998)). Other courts faced with this issue agree. *See, e.g.*, *Valenzuela v. Kehl*, 2006 WL 2474088 (N.D. Tex. August 28, 2006) (Stickney, M.J.) ("Many courts, including the United States District Court for the Northern District of Texas have held in immigration cases that petitioners and applicants have a clear right to have their adjustment applications and visa

ORDER – PAGE 8

petitions adjudicated within a reasonable time of their filing.") (citing *Alkenani v. Barrows*, 356 F.Supp.2d 652, 656 (N.D. Tex. 2005) (Kaplan, M.J.); *Fraga By and Through Fraga v. Smith*, 607 F. Supp. 517, 521 (D.C. Or.1985); *Yu*, 36 F. Supp. 2d at 930-932; *Paunescu v. I.N.S.*, 76 F. Supp.2d 896, 901 (N.D. Ill. 1999); *Agbemaple v. I.N.S*, No. 97-C-854, 1998 WL 292441 at *2 (N.D. Ill. May 18, 1998) (unpublished)).  Therefore, if Alsharqawi can present a clear right to relief, both the Mandamus Act and the APA authorize the Court to compel adjudication of the outstanding applications.

### B.  *Alsharqawi Presents a Right to Relief*

To present a clear and certain right to relief, Alsharqawi must establish a prima facie case that Defendants have failed to adjudicate his applications within a reasonable time, and show that no other remedy exists.  *Yu*, 36 F. Supp. 2d at 932.

Alsharqawi contends that the nearly four years from the time his applications were filed (March 24, 2003) to now constitutes an unreasonable delay for purposes of APA section 706(1).  Defendants, on the other hand, contend that "the Supreme Court has held that the passage of time cannot, standing alone, support" a claim of unreasonable delay.  Def. Br. at 6 (citing *INS v. Miranda*, 459 U.S. 14, 19 (1982)).  In other words, Defendants argue that a court must consider the delay in its entire factual context before the court can deem the delay unreasonable.  The Court agrees that a delay should be considered in context, but, here, the factual context favors Alsharqawi.  Alsharqawi filed his applications nearly four years ago.  The Dallas District Office of the USCIS is currently processing other applications for adjustment of status filed as recently as August 21, 2006, and applications for travel

ORDER – PAGE 9

documents filed as recently as November 20, 2006. Defendants do not claim to have delayed

pursuant to certain regulations that permit withholding adjudication. *See* 8 C.F.R. §

193.2(b)(18). In fact, Defendants cite no reason at all for the long delay. Instead,

Defendants simply argue that the adjudication of the applications is committed to agency

discretion by law, thereby depriving the Court of jurisdiction over this claim. Because

Defendants' duty to adjudicate Alsharqawi's application is not discretionary, and because

Defendants' offer no reason for the delay, the Court finds Defendants' delay of nearly four

years to be unreasonable. *See Valenzuela v. Kehl*, 2006 WL 2474088 (N.D. Tex. August 28,

2006) (Stickney, M.J.) (denying a motion to dismiss where plaintiffs alleged a delay of five

years) (citing *Batista v. INS*, 2000 WL 204535 at 5 (S.D.N.Y. February 22, 2000) (finding

that a delay of thirty-eight months in processing an application for adjustment of status stated

a sufficiently colorable claim for mandamus jurisdiction, but granting summary judgment

dismissing the claim because that delay was not unreasonable under the circumstances)); *Yu*,

36 F. Supp. 2d at 935 (finding a two and one-half year delay unreasonable); *Galvez v.*

*Howerton*, 503 F. Supp. 35, 39 (C.D. Cal.1980) (finding a six month delay unreasonable);

*but see Alkenani v. Barrows*, 356 F. Supp.2d 652, 656 (N.D. Tex. 2005) (Kaplan, M.J.)

("[T]he court is not convinced that the 15-month delay in deciding petitioner's appeal is

unreasonable under the unique circumstances of this case.").

Next, Alsharqawi has established that no other adequate remedy exists. While the

INA provides the channels an applicant must navigate for an adjustment of status or for travel

authorization, it provides no recourse to an applicant stuck in limbo due to the USCIS's

failure to promptly adjudicate applications. *Yu*, 36 F. Supp. 2d at 932. Under the APA, the only recourse is in the courts. *See* 5 U.S.C. § 706(1). Therefore, as the *Yu* court explained, neither the INA nor the APA afford applicants any means "other than resort to this Court[] to challenge this alleged agency malfeasance." *Id.* Accordingly, Alsharqawi has established that no other adequate remedy exists and has thus presented a clear and certain right to relief.

### C.  INA Section 1252(g) Does Not Strip the Court of Jurisdiction

Finally, Defendants argue that 8 U.S.C. § 1252(g) explicitly precludes judicial review in this case. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." According to Defendants, section 1252(g) expresses Congress intent to protect the agency from actions that interfere with prioritizing and adjudicating immigration cases. However, Defendants misread section 1252(g).

By its terms, section 1252(g)'s proscription is confined to review of removal orders. *See* 8 U.S.C. § 1252 (titled, "Judicial Review of Orders of Removal"). Here, Alsharqawi seeks to compel the adjudication of his I-130 and I-131 applications; this case has nothing to do with removal orders. "If Congress intended to limit all judicial review of any INS action or in action, on any matter before the agency, it could have done so. However, by limiting judicial review of 'removal orders' it specifically left intact judicial review of all other matters properly before the Court." *Yu*, 36 F. Supp. 2d at 934. Moreover, Alsharqawi does not complain of any "decision or action by the Attorney General," 8 U.S.C. § 1252(g),

ORDER – PAGE 11

but rather of the Attorney General's *failure* to decide or act.  Accordingly, section 1252(g)

does not strip the Court of authority to entertain Alsharqawi's claim for mandamus.

### CONCLUSION

The Court therefore denies Defendants' motion to dismiss for want of jurisdiction.

As explained above, Alsharqawi has carried his burden and established that jurisdiction is

proper.  For essentially the same reasons the Court holds it has jurisdiction, the Court also

finds that Alsharqawi has stated a claim upon which relief can be granted.  To overcome a

Rule 12(b)(6) motion to dismiss, a plaintiff must allege a factual scenario that would entitle

him to relief, which Alsharqawi has done here.  Therefore, the Court denies Defendants'

motion to state a claim upon which relief can be granted.[4]


Signed March 14, 2007.

David C. Godbey
United States District Judge

---

[4]The Court likewise denies Alsharqawi's motion for hearing as moot.


ORDER – PAGE 12